Douglas T. Tabachnik, Esq.
Juliet T. Wyne, Esq. (Admitted *Pro Hac Vice*)
Law Offices of Douglas T. Tabachnik, P.C.
Woodhull House, Suite C
63 West Main Street
Freehold, NJ 07728
(732) 780-2760
dtabachnik@dttlaw.com
julietwyne@dttlaw.com
Counsel to Gregory F. Holcombe

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Joyce F. Moskovitz,<br><br>                       Debtor.<br><br>Gregory F. Holcombe,<br><br>                       Plaintiff<br>           v.<br><br>Joyce F. Moskovitz,<br><br>                       Defendant. | Chapter 7 Case No. 24-10440-LGB<br><br><br><br><br><br><br>Adv. Pro. No. _____ |

**COMPLAINT**

The Plaintiff, Gregory F. Holcombe ("Plaintiff"), by and through his attorneys, Law Offices of Douglas T. Tabachnik, P.C., as and for his Complaint against the Defendant-Debtor Joyce F. Moskovitz ("Debtor"), respectfully shows to the Court, as follows:

**INTRODUCTION**

1. This is a Complaint filed under the provisions of 11 U.S.C. §§ 523(a) (2) and (4) and 523(c), and Federal Rule of Bankruptcy Procedure 4007, to declare a debt owed to Plaintiff

1

by the Debtor to be non-dischargeable, and under §§ 727(a)(2)(A) and (B), (3), (4) and (5) and (c) and Federal Rule of Bankruptcy Procedure 4004 to object to the granting of a discharge to the Debtor and to award Plaintiff reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2. On March 18, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). By reason of the foregoing, this is a core proceeding with respect to which this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Standing Order of Referral of Cases to Bankruptcy Judges, dated July 10, 1984, (Ward, Acting C.J.), and as amended, by Standing order M10-468, dated January 31 2012 (Preska, C.J.).

3. On May 9, 2025, the Court entered an Order converting this case to a case under Chapter 7 of the Bankruptcy Code.

4. On May 13, 2025, an Interim Chapter 7 Trustee was appointed in this case.

5. On April 17, 2024, the Office of the United States Trustee scheduled the first meeting of Creditors under 11 U.S.C. §341, and it has been continued from time to time thereafter.

6. Venue is proper in this district, pursuant to 28 U.S.C. §1409.

## THE PARTIES

7. Plaintiff Gregory F. Holcomb is an individual residing in Broward County, Florida, and is a secured creditor of the Debtor.

8. The Debtor, by reason of the declarations contained in her petition and schedules in the underlying Chapter 11 case, resides at 11 West 84th Street, Apt. 4, NY, NY 10024. In addition, at all times relevant to the Complaint, the Debtor is a 50% shareholder in the corporation known as JOY-CPW, Inc. ("JOY-CPW"), which is domiciled in New York.

2

**FACTUAL BACKGROUND**

    A.  **History Underlying Debtor Debt to Plaintiff**

9.      On July 29, 2022, Plaintiff and JOY-CPW entered into an Amended Revenue Purchase Agreement whereby, in consideration of the purchase amount of $250,000.00, JOY-CPW agreed to sell, assign and transfer to Plaintiff (making Plaintiff the absolute owner) the purchased percentage of all JOY-CPW's payments, receipts, settlements and funds paid to or received by or for the account of JOY-CPW from time to time on and after the date thereof in payment or settlement of JOY-CPW's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from JOY-CPW's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to JOY-CPW as a result of JOY-CPW's sale of goods and/or services (the "Transactions") until the purchased amount was paid in full by or on behalf of JOY-CPW to Plaintiff.  (A copy of the July 29, 2022, Amended Revenue Purchase Agreement is attached at **Exhibit A**.)

10.      On January 30, 2023, Plaintiff and JOY-CPW entered into another Revenue Purchase Agreement whereby in consideration of the purchase amount of $300,000, JOY-CPW agreed to sell, assign and transfer to Plaintiff (making Plaintiff the absolute owner) the Purchased Percentage of all JOY-CPW's payments, receipts, settlements and funds paid to or received by or for the account of JOY-CPW from time to time on and after the date hereof in payment or settlement of JOY-CPW's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from JOY-CPW's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement,

3

electronic transfer or other form of monetary payment), for the payments to JOY-CPW as a result of JOY-CPW's sale of goods and/or services (the "Transactions") until the purchased amount was paid in full by or on behalf of JOY-CPW to Plaintiff. (See January 30, 2023, Revenue Purchase Agreement attached as **Exhibit B**.)

11. The Debtor and her husband, James Moskovitz, signed both the July 29, 2022 Amended Revenue Purchase Agreement and the January 30, 2023 Revenue Purchase Agreement (collectively referred to as the "Purchase Agreements"), in their individuals capacities as guarantors and agreed in both Purchase Agreements that in the event of JOY-CPW's default of the Purchase Agreements, they would each be jointly and severally liable to Plaintiff for all of Plaintiff's losses and damages, in addition to all costs and expenses and legal fees associated with such enforcement.

12. Additionally, JOY-CPW, and the Debtor and James Moskovitz in their personal capacities as guarantors executed on or about July 29, 2022, and January 30, 2023, respectively, as part of the Purchase Agreements, a "Security Agreement and Guaranty of Performance" for each Purchase Agreement. Each Security and Performance Agreement provided that they incorporated the terms, definitions, and conditions of the Purchase Agreements. The July 29, 2022, and July 30, 2023, Security Agreements and Guaranties of Performance are part of the attached **Exhibits A and B,** respectively.

13. The Security Agreement portions of the respective Security Agreement and Guaranty of Performance ("Security Agreements"), provided that the Security Agreement constituted a security agreement under the Uniform Commercial Code. The Security Agreements provided that to secure JOY-CPW's obligations under the Purchase Agreements, JOY-CPW and the Debtor and James Moskovitz individually as guarantors granted to Plaintiff a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general

intangibles, instruments, film, tape, recordings, data, intellectual property, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by JOY-CPW and/or Guarantor(s)(s), (b) all proceeds, as that term is defined in Article 9 of the UCC, (c) all funds at any time in JOY-CPW's and/or the Guarantors' Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to Plaintiff under the Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets").

14. Additionally, as part of the Purchase Agreements and the accompanying Security Agreement and Guaranty of Performance, the Debtor and James Moskovitz, on or about July 29, 2022 and January 30, 2023, respectively, agreed to and executed a Guaranty of Performance as an additional inducement for Plaintiff to enter into the Purchase Agreements, wherein they each agreed to be jointly and severally liable to Plaintiff in the event of a default pursuant to paragraph 3.1 in the Purchase Agreements.

15. In the Guaranty of Performance for the Purchase Agreements, the Debtor and James Moskovitz each guaranteed JOY-CPW's good faith, truthfulness, and performance of all representations, warranties, and covenants made by JOY-CPW in the Purchase Agreements, including JOY-CPW's full and timely delivery of the purchased amount pursuant to the Purchase Agreements. The Debtor and James Moskovitz's obligations as guarantors were due at the time of any breach by JOY-CPW of any representation, warranty, or covenant made by JOY-CPW in the Purchase Agreements.

16. On January 30, 2023, simultaneously with the execution of the January 30, 2023, Purchase Agreement, JOY-CPW, the Debtor and James Moskovitz executed a Confession of Judgment of amounts owing under the Purchase Agreements. (The Confession of Judgment is

attached as **Exhibit C**.)

17. On May 25, 2023, the Debtor and James Moskovitz entered into a Stock Pledge Agreement pledging all of the stock they owned in JOY-CPW to Plaintiff as security for all amounts owed to him. (The May 25, 2023, Stock Pledge Agreement is attached as **Exhibit D**.)

18. On August 8, 2023, a UCC-1 was filed in favor of Plaintiff covering all the stock and assets of JOY-CPW and the accounts receivable, cash, and bank accounts of JOY-CPW. (See UCC-1 attached as **Exhibit E**.)

19. On December 1, 2023, Plaintiff, the Debtor, and James Moskovitz, individually, and JOY-CPW executed and entered into a Forbearance Agreement. Under this Forbearance Agreement, the parties agreed that an event of default had occurred under the Purchase Agreements because JOY-CPW, the Debtor, and James Moskovits had failed to pay the Purchase Amounts under the Purchase Agreements. Pursuant to the Forbearance Agreement, JOY-CPW, the Debtor, and James Moskovitz requested a forbearance period for amounts owing under the Purchase Agreements to afford them time to pay their acknowledged indebtedness. (See the Forbearance Agreement attached as **Exhibit F**.)

20. The parties to the Forbearance Agreement agreed that $375,000.00 was the principal amount owing under the Purchase Agreements and the aforesaid Guarantees of Performance for the Purchase Agreements, such funds being secured by the aforesaid Security Agreements and UCC-1 Financing Statement, which such amount did not include interest, fees, expenses, attorney's fees and other amounts which were chargeable or otherwise reimbursable under the Purchase Agreements.

21. On December 7, 2023, the Debtor and James Moskovitz executed a Promissory Note in the principal amount of $375,000 exclusive of interest, fees, expenses, attorney's fees, and other amounts that were chargeable or otherwise reimbursable under the Purchase

6

Agreements. (See Promissory Note executed by the Debtor and James Moskovitz attached as **Exhibit G**.)

22. On December 7, 2023, JOY-CPW executed a Promissory Note in the principal amount of $375,000 exclusive of interest, fees, expenses, attorney's fees, and other amounts that were chargeable or otherwise reimbursable under the Purchase Agreements. (See Promissory Note executed by JOY-CPW attached as **Exhibit H**.)

23. The Forbearance Agreement provided that JOY-CPW, the Debtor and James Moskovitz, individually and collectively, acknowledged and agreed that the Purchase Agreements, the Security and Pledge Agreement, the Guarantees and all associated agreements constitute the legal, valid and binding obligations of JOY-CPW, the Debtor and James Moskovitz, enforceable by Plaintiff in accordance with their respective terms, and the security interests granted by JOY-CPW, the Debtor and James Moskovitz in its assets are the legal, valid and binding obligations of JOY-CPW, the Debtor and James Moskovitz.

24. JOY-CPW, the Debtor and James Moskovitz defaulted on their obligations owed under the Forbearance Agreement and the aforesaid Promissory Notes by failing to pay the first payment due under the Promissory Note of $50,000.00 on February 28, 2024. As a result of this default, all of the amounts owing to Plaintiff were due under the Purchase Agreements, Promissory Notes, and Guarantees of Performance and related other documents, which such amounts were secured and guaranteed as described above in this Complaint. Plaintiff provided notice of this default by letter dated March 1, 2024, a copy of which is attached hereto as **Exhibit I**.

25. Plaintiff is entitled to an award of attorney's fees and costs pursuant to the Purchase Agreements and the Security and Guaranty of Performance made a part of each, respectively, the Stock Pledge Agreement, the Promissory Note, the Forbearance Agreement,

7

and the Confession of Judgment.

26. The Purchase Agreements and accompanying Security Agreement and Guaranty of Performance, Confession of Judgement, Stock Pledge Agreement, UCC-1, the Forbearance Agreement, and the Promissory Notes are collectively referred to as the "Executed Documents."

**B. Debtor's Failure to Report Income and Misuse of Personal and JOY-CPW Funds**

27. The Debtor's operating reports show income of Social Security payments of $1,036.00. After distributions each month, the Debtor's estate has $100.00 or less remaining in the account.

28. The Debtor has admitted in papers filed with the Court that she is entitled to distributions from JOY-CPW but does not take them.

29. During at least the four years prior to the Debtor's bankruptcy petition filing, the Debtor has knowingly used JOY-CPW funds as if they were personal income without adhering to the proper corporate structure.

30. During at least four years prior to the Debtor's bankruptcy petition filing and with the Debtor's full knowledge, JOY-CPW has made payments on the Debtor's behalf or for the Debtor's relatives or other associated people for the Debtor's benefit. The Debtor has failed to report any of these payments as income on her schedules. Examples of these payments during this time period include thousands of dollars for the Debtor's personal credit cards, for personal travel, for food delivery and restaurants, for clothing, and for her brother's monthly residential rent payment in Miami, Florida.

31. During at least the four years prior to the Debtor's bankruptcy petition filing and with the Debtor's full knowledge, JOY-CPW has paid many thousands of dollars into the personal Chase bank account of the Debtor and James Moskovitz. These payments were made through multiple electronic transfers each month in different amounts. The Debtor has failed to

8

report any of these payments as income on her schedules.

32. During at least the four years prior to the Debtor's bankruptcy petition filing and with the Debtor's full knowledge, upon information and belief, the Debtor paid thousands of dollars from the Debtor's and James Moskovitz's personal account into the corporate account of JOY-CPW without any proper corporate documents.

33. Upon information and belief, in addition to JOY-CPW, the Debtor is knowingly associated with JMJ Films, Inc., and 4 Wall and All Affiliated Companies. The Debtor does not report these companies on her schedules. During at least the four years prior to the Debtor's bankruptcy petition filing, the Debtor knowingly used and benefited from the JMJ Films, Inc. business credit card.

34. The Debtor failed to disclose on her schedules a loan from JOY-CPW to her in the amount of $1,043,043.00, which she still owed at the time of filing her bankruptcy petition.

35. On or about June 22, 2022, James Moskovitz represented to Plaintiff that JOY-CPW was in the process of finalizing a sale of the company. James Moskovitz made this representation to solicit funds from Plaintiff.

36. JOY-CPW did not sell itself as a company but rather on or about September 22, 2022, James Moskovitz, in his individual capacity, sold JOY-CPW's archival assets for $2,950,000.00.

37. James Moskovitz sold JOY-CPW's archival assets as if they were his personal property, even though they were the corporate property of JOY-CPW. The Closing Statement for the Archival Assets shows the $2,950,000 paid to James Moskovitz and only $50,000.00 being paid to JOY-CPW.

38. On or about September 22, 2022, the Chase bank records for the Debtor and James Moskovitz's personal account show a deposit of $2,950,000, which represented proceeds

from JOY-CPW's sale of its archival assets.

39. At the time of the aforesaid September deposit of $2,950,000.00, the Debtor was the sole shareholder of JOY-CPW.

40. The $2,950,000 deposited into the Debtor and James Moskovitz's account was used to pay millions of dollars, upon information and belief, for personal expenses of the Debtor and James Moskovitz.

41. Upon information and belief, in or about June of 2023, the Debtor transferred 50% of the 100% stock she owned in JOY-CPW to James Moskovitz without receiving any remuneration for such transfer.

42. As of the date of the filing of the petition in this bankruptcy case, the Debtor owned 50% of the stock of JOY-CPW. The Debtor has listed the value of 50% of the stock of JOY-CPW at $7,500,000.00. See Amended Schedules A/B, docket no. 21, item 19.

43. *Gametime with Boomer Esiason* is a sports show broadcast.

44. Upon information and belief, for at least four years before the filing of the bankruptcy petition and at the time of the filing, *Gametime with Boomer Esiason* was run through JOY-CPW.

45. The Debtor's husband, James Moskovitz gave deposition testimony in June of 2025, in the case of *Holcombe v. James L. Moskovitz, JOY-CPW, Inc. and JMJ Films, Inc.*, Index No. 69229/2025, filed in the Supreme Court, Westchester County, (the "2025 New York Action") that, sometime in late April or early May of 2025, James Moskovitz started running the *Gametime with Boomer Esiason* show through JMJ Films, Inc.

46. Upon information and belief, JMJ Films, Inc. is owned entirely by James Moskovitz.

47. Upon information and belief, the *Gametime with Boomer Esiason* show, currently

10

run through JMJ Films, Inc., is the same show that was run through JOY-CPW.

48. Upon information and belief, the reason James Moskovitz, with the knowledge and consent of the Debtor, began running the *Gametime with Boomer Esiason* show out of JMJ Films, Inc. is that the bank account of JOY-CPW had been attached in the New York Action for purposes of paying a judgment in favor of Plaintiff in the New York Action.

49. Upon information and belief, at the time JMJ Films, Inc. began running the *Gametime with Boomer Esiason* show, no consideration was paid to JOY-CPW for that show.

50. Upon information and belief, the value of shares for JOY-CPW is and was at all times relevant herein derived from the production and distribution of *Gametime with Boomer Esiason*.

51. Upon information and belief, when JMJ Films, Inc. began production and distribution of the *Gametime with Boomer Esiason* show without any compensation to JOY-CPW, the value of the Debtor's shares in JOY-CPW dropped dramatically and may now be completely without any value.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST THE DEBTOR

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42, as though the same were fully set forth in full herein.

53. The Debtor knew that she gave the guarantees contained within the language of the Purchase Agreements and the accompanying Security Agreements and Guarantees and the Confession of Judgment to induce Plaintiff to enter into the Purchase Agreements;

54. The Debtor knew that she signed the Stock Pledge Agreement as a showing of additional collateral for the obligations owed to Plaintiff pursuant to the Purchase Agreements, which Plaintiff had guaranteed.

55. The Debtor knew she gave the Forbearance Agreement and the Promissory Note

11

in conjunction with the Forbearance Agreement to induce Plaintiff to give more time for payment of the obligations JOY-CPW, the Debtor and James Moskovitz owed to Plaintiff.

56. At or about the time the Debtor gave the Executed Documents, she knew that:

a. For many years, the Debtor and James Moskovitz had misused JOY-CPW funds for personal expenses at the expense of JOY-CPW creditors;

b. JOY-CPW had loaned the Debtor $1,043,043.00, with, upon information and belief, no consideration being paid to JOY-CPW and no written agreement regarding repayment of such loan.

c. For many years, the Debtor used JOY-CPW funds to pay personal expenses of herself and her relatives; and

d. For many years, JOY-CPW had transferred many thousands of dollars into the personal Chase bank account of the Debtor and her husband without any proper JOY-CPW directives, agreements, or other writings allowing for such transfers and without any consideration to JOY-CPW.

e. For many years, the Debtor, upon information and belief, knew that many thousands of dollars from the Debtor and James Moskovitz's personal bank account were transferred into the JOY-CPW corporate bank account.

57. The Debtor knew at the time she guaranteed performance of JOY-CPW's payment to Plaintiff in the language of the January 30, 2023, Purchase Agreement and when she signed the accompanying Security Agreement and Guaranty of Performance, when she gave the Confession of Judgment, when she signed the Stock Pledge Agreement, and when she signed the Forbearance Agreement and gave the Promissory Note that JOY-CPW had sold its archival assets and that $2,950,000.00 of profits which should have gone to JOY-CPW was instead paid to James Moskovitz and that $2,950,000.00 had been paid into the Debtor and James

12

Moskovitz's personal Chase bank account.

58. The Debtor knew that the $2,950,000 was used to pay millions of dollars of, upon information and belief, personal expenses of the Debtor and James Moskovitz.

59. The Debtor knew at relevant times hereto that she had transferred 50% of her shares to James Moskovitz without, upon information and belief, any remuneration for the same.

60. Debtor's failure to advise Plaintiff of her material knowledge as stated in the allegations above when she entered into the Executed Documents was an implied misrepresentation, was deceptive, and was part of a scheme to induce Plaintiff to enter into the Purchase Agreements, the Forbearance Agreement, and the Promissory Note.

61. Plaintiff relied on the Debtor's implied, material misrepresentations, deception, and scheme when he entered into the Purchase Agreements, the Forbearance Agreements, and the Promissory Note, and as a result, has been damaged.

62. As a result of the allegations stated above, Plaintiff's debt should not be discharged under 11 U.S.C. §§523(a)(2)(A) and (c) as a result of the Debtor's false pretenses, false misrepresentations, and actual fraud.

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST THE DEBTOR**

63. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 and 53 through 59, as though the same were fully set forth in full herein.

64. The Debtor wrongfully and with fraudulent intent took the funds of JOY-CPW without JOY-CPW's consent and converted those funds to her own personal use.

65. The Debtor wrongfully and with fraudulent intent took the funds of JOY-CPW without JOY-CPW's consent and converted those funds to pay debts of relatives and others.

66. The Debtor wrongfully and with fraudulent intent caused JOY-CPW to issue a loan to her in the amount of $1,043,043 without JOY-CPW's consent and converted those funds

13

to her personal use.

67. The Debtor wrongfully and with fraudulent intent converted $2,950,000.00 of proceeds from the sale of JOY-CPW's archive assets without JOY-CPW's consent for her and James Moskovitz's own personal use.

68. When the Plaintiff's debt was created and at all relevant times hereto, the Debtor knew that her conversion of JOY-CPW funds would cause Plaintiff's debt not to be paid.

69. Debtor's failure to advise Plaintiff of her knowledge of the above allegations concerning the misappropriation of funds from JOY-CPW at the expense of creditors when she entered into and gave the Executed Documents were implied misrepresentations, were deceptive and were part of a scheme to induce Plaintiff to enter into the Purchase Agreements, the Forbearance Agreement, and the Promissory Note.

70. Plaintiff relied on the Debtor's implied misrepresentations, deception, and scheme when incurring the debt he seeks to have declared as non-dischargeable.

71. As a result of the allegations stated above, Plaintiff's claim is not dischargeable under 11 U.S.C. §§523(a)(4) and (c) as a result of the Debtor's larceny and actual fraud.

**AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST THE DEBTOR**

72. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42, as though the same were fully set forth herein.

73. By reason of the foregoing, the Court should not grant the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(A), because the Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the Debtor within one year before the date of the filing of the petition.

**AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST THE DEBTOR**

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51, as though the same were fully set forth in full herein.

75. Upon information and belief, after the date of the Debtor's bankruptcy petition filing, and with the Debtor's full knowledge, JOY-CPW has made payments on the Debtor's behalf or for the Debtor's relatives or other associated people for the Debtor's benefit. The Debtor has failed to report any of these payments as income on her schedules. Examples of these payments during this time period include thousands of dollars of payment for the Debtor's personal credit cards, for personal travel, for food delivery and restaurants, for clothing, and for her brother's monthly residential rent payment in Miami, Florida.

76. Upon information and belief, after the date of the Debtor's bankruptcy petition filing, and with the Debtor's full knowledge, JOY-CPW, Inc., has paid many thousands of dollars into the personal Chase bank account of the Debtor and James Moskovitz. These payments were made through many electronic transfers each month in different amounts. The Debtor has failed to report any of these payments as income on her schedules.

77. Upon information and belief, after the date of the Debtor's bankruptcy petition filing, the Debtor knowingly paid thousands of dollars from the Debtor and James Moskovitz's personal account into the corporate account of JOY-CPW without any proper corporate documents.

78. Upon information and belief, in addition to JOY-CPW, after the date of the Debtor's bankruptcy petition filing, the Debtor is knowingly associated with JMJ Films, Inc., and 4 Wall and All Affiliated Companies. The Debtor did not report these companies on her schedules.

79. Upon information and belief, after the date of the Debtor's bankruptcy petition filing and with the Debtor's full knowledge, JMJ Films, Inc. began production and took over the *Gametime with Boomer Esiason* show from JOY-CPW, with no remuneration paid to JOY-CPW.

80. Upon information and belief and with the full knowledge of the Debtor, as a result of JMJ Films, Inc. taking over production of *Game Time with Boomer Esiason* without compensation to JOY-CPW, the value of the Debtor's stock in JOY-CPW has lost great value, with it possibly being rendered valueless.

81. By reason of the foregoing, the Court should not grant the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(B) because the Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the estate after the date of the filing of the petition.

## AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST THE DEBTOR

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51, as though the same were fully set forth in full herein.

83. Upon information and belief, the Debtor failed to keep and preserve any books or records from which the Debtor's financial condition or business transaction might be ascertained.

84. Upon information and belief, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained and should not receive a discharge pursuant to 11 U.S.C. §727(a)(3).

16

## AS AND FOR A SIXTH CLAIM FOR RELIEF AGAINST THE DEBTOR

85. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 as though the same were fully set forth in full herein.

86. The Debtor signed her bankruptcy schedules under oath.

87. In her bankruptcy schedules, the Debtor made statements concerning her income, monies, and loans which were false because she did not report all of the income, monies, and loans she has received and is receiving.

88. The Debtor knowingly failed to accurately identify Plaintiff as a secured creditor on her schedules.

89. The Debtor knew that the statements she made under oath on her bankruptcy schedules were false.

90. The Debtor made these false statements with the intent to deceive.

91. The Debtor's false statements are materially related to the bankruptcy case.

92. Because the Debtor has made a false oath or account, she is not entitled to a discharge pursuant to 11 U.S.C. §727(a)(4)(A).

## AS AND FOR A SEVENTH CLAIM FOR RELIEF AGAINST THE DEBTOR

93. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 8, 56-61, 64-70, and 75-80.

94. By reason of the foregoing, the Debtor has failed to explain the loss of assets or alleged insolvency as those terms are utilized and within the meaning of 11 U.S.C. §727(a)(5).

WHEREFORE, Plaintiff demands judgment as follows:

1. On the First and Second Claims for Relief, finding and holding that the debt owed to Plaintiff by the Debtor is not dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (c).

17

2. On the Third Claim for Relief, finding and holding that the Debtor is not discharged pursuant to 11 U.S.C. §727(a)(2)(A).

3. On the Fourth Claim for Relief, finding and holding that the Debtor is not discharged pursuant to 11 U.S.C §727(a)(2)(B).

4. On the Fifth Claim for Relief, finding and holding that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. §727(a)(3).

5. On the Sixth Claim for Relief, finding and holding that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. §727(a)(4)(A).

6. On the Seventh Claim for Relief, finding and holding that the Debtor is not entitled to a discharge, pursuant to 11 U.S.C. §727(a)(5).

7. For such other and further relief as this Court may seem just, proper, and equitable.

Dated: December 29, 2025

LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C.

By: /s/Douglas T. Tabachnik
Douglas T. Tabachnik
Juliet T. Wyne (Admitted *Pro Hac Vice*)
Woodhull House, Suite C
63 West Main Street
Freehold, NJ 07728
(732) 780-2760
dtabachnik@dttlaw.com
julietwyne@dttlaw.com
Counsel to Gregory F. Holcombe